J-S11015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.W. | : | |
| | : | |
| Appellant | : | No. 1292 WDA 2019 |

Appeal from the Order Entered August 1, 2019
In the Court of Common Pleas of Fayette County Civil Division at No(s):
No. 147 of 2017 GD

BEFORE: NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.: **FILED APRIL 13, 2020**

K.W. (Mother) appeals from the order denying her request to relocate and maintain equally shared legal and physical custody with K.W. (Father) of their minor child, D.W. (Child). After careful review, we vacate and remand for consideration of the 23 Pa.C.S. § 5337(h) relocation factors.

The parties were married in October 2010 and have one child, who was born in October 2011. N.T., 2/20/18, at 4, 8. They separated in January 2017, although Mother remained in the marital home. *Id.* at 12, 59. Mother indicated that she planned to move from the home to North Dakota and take Child with her. N.T., 3/23/18, at 8. On January 23, 2017, Father filed a complaint seeking primary physical custody of Child and a petition for special relief seeking a court order prohibiting Mother from relocating to North Dakota with Child. Compl. for Custody, 1/23/17. The court granted the petition on January 26, 2017. Order, 1/26/17, at 1.

A divorce decree was entered in September 2017. N.T., 2/20/18, at 4. On November 8, 2017, Mother requested child custody mediation and filed a notice of relocation. Notice of Proposed Relocation, 11/8/17, at 1. On December 7, 2017, Father filed a counter-affidavit objecting to the relocation. Counter-Aff., 12/7/17 at 1. The trial court held hearings on the various custody issues on February 20, 2018, March 23, 2018,[1] and July 30, 2019. At the February hearing, Mother testified on her own behalf. At the March hearing, Father, L.W., Paternal Grandmother, and C.S., Father's girlfriend, testified on his behalf. Mother testified on her own behalf. At the July hearing, Mother and C.C., her husband, testified on her behalf. Father testified on his own behalf. During this time, Mother and Father continued to reside together, and no initial custody order was entered. N.T., 2/20/18, at 12.

At the February 20, 2018 hearing, Mother testified regarding her life with Child and Father, her desire to relocate to North Dakota to live with her then-fiancé, C.C.,[2] and the parental duties she performed for Child. *Id.* at 7-74. Relevant to the instant appeal, Mother testified that, if the court denied her petition for relocation, she had not made up her mind whether she would relocate without Child, because she did not want to leave Child. *Id.* at 62. Mother later testified that if the trial court denied her request, she would find

_____

[1] The transcripts of the February 20 and March 23, 2018 hearings are labeled "relocation hearings." The transcript of the July 30, 2019 hearing is labeled "custody hearing."

[2] Mother and C.C. were married in July 2019.

an apartment near the marital home. *Id.* at 64. Both parties testified that the cost of traveling between Pennsylvania and North Dakota would be prohibitive of frequent custody exchanges. *Id.* at 63-64; N.T., 3/23/18, at 94.

On March 23, 2018, during the hearing, the trial court asked, "So, the only relevant provision in that is essentially following the entry of my order on custody, [Mother] is planning to—[M]other is planning to relocate out of the home somewhere?" N.T., 3/23/18, at 18. At that hearing, Father testified that he opposed Mother's relocation and was comfortable having shared physical custody so long as Mother remained in the area. *Id.* at 29. Paternal Grandmother testified that finding out that Mother "was going to relocate to North Dakota" devastated her and Paternal Grandfather and that Child should not have to be relocated halfway across the United States. *Id.* at 124.

Similarly, at the July 30, 2019 hearing, Mother testified regarding her continued desire to relocate to North Dakota, and C.C., now her husband, testified regarding his desire for Mother to relocate to North Dakota. N.T., 7/30/19, at 6-62. Father testified that he continued to oppose the relocation. *Id.* at 63.

On August 1, 2019, the trial court issued its custody order, providing its reasoning with regard to the sixteen custody factors pursuant to 23 Pa.C.S. § 5328(a), and granting the parties equally shared legal and physical custody. Order, 8/1/19, at 1. The order provided for a custody schedule encompassing holidays, vacations, and other logistical issues. *Id.*

Mother timely filed a notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) challenging the trial court's failure to consider the required relocation factors. The trial court prepared a responsive Rule 1925(a) opinion.

In its opinion, the trial court explained that it did not consider the relocation factors because Mother stated that she would not move to North Dakota until she had primary custody of Child. The trial court concluded that there was "no 'relocation' to consider unless and until that happens." Trial Ct. Op., 11/7/19, at 2-4. The trial court reasoned that 23 Pa.C.S. § 5337 requires that a party actually be relocating, and Mother was not relocating. *Id.*

Additionally, the trial court noted that its approach "was to consider first which parent should be the primary custodian" and then consider Mother's relocation petition if Mother became the primary custodian. *Id.* at 7. The trial court determined that Mother "was not awarded primary custody," because the Child's "best interests favored a shared custody arrangement, and therefore, it had "no reason to consider the 'relocation' factors because Mother's individual choice to relocate her residence to North Dakota would not 'significantly impair[] the ability of a nonrelocating party to exercise custodial rights." *Id.* at 7-8. Rather, the trial court stated, Mother's "individual choice to relocate would only impair her own ability to exercise custodial rights." *Id.* at 8.

Lastly, the trial court reviewed the ten relocation factors set forth in 23 Pa.C.S. § 5337(h). *Id.* at 8-10. The trial court indicated that a remand was not necessary to do "what was just done . . . ." *Id.* at 10.

On appeal, Mother raises the following issue for our review:

> Whether the trial court erred as a matter of law and/or abused its discretion in failing to consider factors of 23 Pa.C.S. § 5337(h) pertaining to relocation when it entered its final custody order?

Mother's Brief at 2 (formatting altered).

Mother argues that the trial court erred in failing to consider the ten relocation factors in its order. *Id.* at 6-7. Mother contends that the record did not support the trial court's finding that she lacked an intent to relocate. *Id.* at 9-10. Mother argues that the trial court "erred by failing to properly address the issue of whether Mother had the intent necessary to constitute a relocation, and whether her proposed relocation would" significantly impair Father's custodial rights. *Id.* at 11. Lastly, Mother argues that the trial court "failed to address all relevant relocation factors" with specificity. *Id.* Mother then discusses each of the relocation factors and argues why the trial court should have evaluated each factor in favor of relocation. *Id.* at 12-35 (citing, *inter alia*, **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014)).

Father counters the trial court did not err by failing to consider the relocation factors. Father's Brief at 3. Father interprets Mother's testimony to say that Mother "would not relocate unless the [c]ourt granted her request to relocate . . . ." *Id.* at 6-7. Father argues that Mother's testimony, in conjunction with her failure to challenge "any of the enumerated custody

- 5 -

factors," means that she "waived her right to challenge the trial court's decision not to consider the relocation factors." *Id.* at 8. Father contends that a discussion of such factors "became moot following the trial court's determination that [Child's] best interest was served" by shared legal and physical custody. *Id.* at 8-9. Father also argues that *A.V.*, cited in Mother's brief, Mother's Brief at 12, is distinguishable. Father's Brief at 10-11.

The scope and standard of review in custody matters is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted).

"[W]hen making a custody award, the court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." *Id.* at 335 (citation and some formatting omitted). The trial court must "delineate its reasons **at or near the time of its decision**," and we have held that the trial court errs when it fails to provide its reasoning until the

appeal is taken. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 835 (Pa. Super. 2013) (emphasis added) (holding trial court erred in not delineating its custody and relocation factors until the time of appeal).

The Child Custody Act lists the factors to be considered by the trial court:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Additionally, with regard to relocation, the Child Custody Act defines relocation as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S. § 5322(a); *see also C.M.K. v. K.E.M.*, 45 A.3d 417, 422 (Pa. Super. 2012). Prior to a relocation occurring, the trial court must approve the relocation. 23 Pa.C.S. § 5337(b)(2).

Where a request for relocation of the subject children along with a parent is involved, the trial court must consider all of the following ten relocation factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

With regard to relocation, this Court has observed

[W]e conclude here that sections 5323(d) and 5328 require the trial court to set forth [the reasons for its decision] at or near the time it issues its decision in a custody proceeding. We have held that, because the best interests of the child are the paramount concern of any custody case, the trial court must address the sixteen best interest factors of section 5328(a) and the ten relocation factors of section 5337(h). *B.K.M. v. J.A.M.*, 50 A.3d 168, 172-75 (Pa. Super. 2012) (finding the trial court erred in failing to consider all section 5328(a) and section 5337(h) factors). Therefore, by logical necessity, today we emphasize that our holding in [*C.B. v. J.B.*, 65 A.3d 946 (Pa. Super. 2013)] (*i.e.*, that section 5323(d) requires the trial court to delineate its reasoning at or near the time of its decision) extends to cases that involve both custody and relocation pursuant to section 5337.

*A.M.S.*, 70 A.3d at 835 (footnote omitted).

"When a custody dispute involves a request by a party to relocate, we have explained there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." *C.M.K.*, 45 A.3d at 421 (citation and quotation marks omitted). In *D.K. v. S.P.K.*, 102 A.3d 467 (Pa. Super. 2014), the Court provides additional guidance, noting that "we do not hold that a trial court cannot or should not consider the factors of section 5337(h) in a case where a request for modification of the custody order involves the change of

residence of the child to a significantly distant location." **D.K.**, 102 A.3d at 474. When the child stands to move a significant distance, a trial court "should still consider the relevant factors of section 5337(h) in [its] section 5328(a) best-interests analysis." **Id.** at 477-78. The catchall provision of Section 5328(a)(16) encompasses the relocation factors, but the trial court must consider both. **Id.**

When a case involves custody and relocation issues, this Court has approved of "keeping both inquiries under a single umbrella of best interests of the children . . . ." **Collins v. Collins**, 897 A.2d 466, 473 (Pa. Super. 2006) (concluding that the trial court erred in awarding primary custody to a father despite the court's conclusion that mother, who sought to relocate, was a better parent); **see also S.J.S. v. M.J.S.**, 76 A.3d 541, 549-50 (Pa. Super. 2013) (concluding that the trial court did not err in engaging in a "dual analysis" of the custody and relocation factors and rejecting the mother's claim that the trial court should have made a custody determination and then engaged in a relocation analysis). Conversely, this Court has disapproved of dissociating custody and relocation factors, **see Collins**, 897 A.2d at 473, and noted that it may be "unrealistic to compartmentalize" custody and relocation issues. **S.J.S.**, 76 A.3d at 550.

Instantly, we initially note that Mother filed a notice of relocation on November 8, 2017. At the various hearings, Mother testified that she wished to move because the relocation would have a positive impact on Child's education. N.T., 2/20/18, at 49-50. Mother believed the move would enhance

- 11 -

her quality of life as she would be able to provide more financially for Child. *Id.* at 51-53. Mother also testified that both she and Child would be "less stressed" being away from Father, and that Child would have stepsisters to play with there. *Id.* Mother testified that she had an open job offer with a salary that exceeded her current salary, and that she does not have similar work opportunities in Pennsylvania. *Id.* Mother testified that if the trial court denied her petition for relocation, she had not made up her mind whether she would relocate without Child, because she did not want to leave Child. *Id.* at 62. If the trial court denied her request, Mother later testified that she would find an apartment near the marital home. *Id.* at 64.

At the July 30, 2019 hearing, Mother testified that she and C.C. were married on July 4, 2019, in North Dakota. N.T., 7/30/19, at 11. Mother and C.C. rent an apartment in Connellsville, Pennsylvania, where they stay when C.C. visits every six to eight weeks. *Id.* at 11-12. C.C. has been building a loving relationship with Child. *Id.* at 12-13. Mother still has an open job offer in North Dakota. *Id.* at 8-9. Mother testified that the economy in North Dakota is stronger and that there are more opportunities for Child to be treated for his attention deficit hyperactivity disorder (ADHD) and Asperger's syndrome. *Id.* at 35-36. Mother testified that "I am going to move to North Dakota, just the question is when because it sucks. That's where my future is and that's where my heart is. I know without a doubt that's where [Child's] is as well . . . ." *Id.* at 36. When asked what she would do if the trial court said Child could not move, Mother responded that, "I will wait for him. One

- 12 -

day, I will get there. I will just keep fighting for it." *Id.* at 38. Mother testified that she did not wish to relocate if Child could not come with her. *Id.* at 41.

C.C. testified that he was aware that if the trial court did not grant Mother's request to relocate, Mother intended to remain living in Pennsylvania, and that they would continue a long-distance relationship during that time. *Id.* at 60. Father testified that he continued to lodge an objection to Mother's request to relocate with Child, and believed it was in Child's best interest to remain residing primarily in Pennsylvania. *Id.* at 63.

Despite the trial court's assertions to the contrary, we hold it is logically inconsistent with the testimony and record to claim that Mother did not wish to relocate. As set forth above, Mother filed a notice of proposed relocation. Mother repeatedly expressed her desire to relocate. Mother had an open job offer in North Dakota where she would make double or triple her current salary. Mother's husband lives and works in North Dakota, with no way to transfer his position to Pennsylvania or any closer area, and, under the current arrangement, Mother sees him only once every six to eight weeks. At each hearing, two of which were classified as relocation proceedings, Mother and Father each testified regarding Mother's desire to relocate and the evidence in support and against such relocation.

Although Mother testified that she would not relocate if she was not granted primary custody of Child, that fact alone does not relieve the trial court of the requirement to consider the relocation factors or mean that no relocation was pending. Although the trial court ultimately denied the

relocation, it would have involved the change of Child's residence to a significantly distant location that would have impaired Father's custodial rights. *See D.K.*, 102 A.3d at 474. Simply because the trial court refused to grant the proposed relocation did not mean there was no relocation pending, specifically where no relocation is possible unless the trial court approves said relocation. 23 Pa.C.S. § 5337(b)(2); *see also C.M.K.*, 45 A.3d at 422. Accordingly, the trial court should have considered the relevant factors of 23 Pa.C.S. § 5337(h) in a best-interests analysis. *Id.*

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court cursorily discussed the evidence supporting the relocation factors but did not analyze the Section 5337(h) factors and did not cite to the evidentiary record in support of its analysis. *See* Trial Ct. Op. at 7-10. The trial court's opinion was not issued at or near the time of the decision. *See A.M.S.*, 70 A.3d at 835. Moreover, the trial court apparently dissociated its analyses of the custody and relocation factors rather than addressing both issues under a single umbrella.[3] *See* Trial Ct. Op. at 7-8; *Collins*, 897 A.2d at 473; *accord S.J.S.*, 76 A.3d at 550.

Accordingly, we vacate the August 1, 2019 order and remand to the trial court to promptly consider the Section 5337(h) relocation factors in

---

[3] Because of our disposition, we need not address Mother's claim that the relocation factors favored her request to move to North Dakota or Father's challenge to Mother's reliance on *A.V.*

conjunction with the custody factors. The trial court shall then issue a new order addressing the parties' custody and relocation requests.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2020